Kathleen M. Lee (014871997)
HARWOOD LLOYD, LLC
130 Main Street
Hackensack, New Jersey 07601
201-487-1080
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
NEWARK DIVISION

DOCUMENT ELECTRONICALLY FILED

| | |
|---|---|
| BRYAN KOBEL,<br><br>    Plaintiff,<br><br>vs.<br><br>LAIDLAW & CO. (UK), LTD., and ABC CORPS. 1 THROUGH 10 (names being fictitious and unknown).<br><br>    Defendants. | Civil Action No.<br><br><br>**COMPLAINT** |

Plaintiff, Bryan Kobel, ("Plaintiff"), by way of Complaint against Defendants, Laidlaw & Co. (UK), LTD. ("Defendant Laidlaw"), and ABC Corps. 1 through 10 (names being fictitious and unknown), says:

**PARTIES**

1.  Plaintiff is an individual, residing at 35 Hudson Street, Apt. 2111W, Hoboken, New Jersey.

2.  From in or about March 2012 until 2017, Plaintiff was employed with Defendant

Laidlaw.

3. At all rimes relevant herein, Defendant Laidlaw was a United Kingdom entity, authorized to do business in the United States, with a business address at 546 5th Avenue, 5th Floor, New York, New York, 10036.

4. Defendant Laidlaw is in the financial services business. Specifically, it provides investment advice and services to private and public institutions, and high net worth individual investors.

## JURISDICTION

5. Plaintiff is a resident of the State of New Jersey.

6. Defendant is an entity formed in the United Kingdom, authorized to conduct business in the United States, and operating in the State of New York.

7. The matter in controversy exceeds $75,000.00.

8. Pursuant to 28 U.S.C. 1332 (a), jurisdiction lies in the Federal District Court for the District of New Jersey.

## BACKGROUND

9. In March 2012 Plaintiff was hired by Defendant Laidlaw's Head of Capital Markets & Managing Partner, James Ahern ("Mr. Ahern") and its CEO & Managing Partner, Matthew Eitner ("Mr. Eitner"), as Mr. Ahern's partner on the Capital Markets desk. Plaintiff's role included helping build the firm's institutional presence and banking/capital markets efforts. This included helping build Defendant Laidlaw's institutional sales force, research department and banking department, representing the firm at countless conferences, and traveling the United States on non-deal roadshows and "deal" roadshows with banking clients to both Defendant Laidlaw's institutional and retail broker

sales force.

10. At the request of Mr. Eitner, Plaintiff was asked to review prior investment banking transactions completed by Defendant Laidlaw and see which could be fixed or saved. Mainly, these were companies that had been losses for the firm and its clientele.

11. One such legacy deal was Beacon Enterprise Solutions ("Beacon"). At the time it was publicly traded under the symbol BEAC, and ended up filing for Chapter 11 Bankruptcy in or about September 2012. Plaintiff had prior experience working with BEAC. Plaintiff reached out to Chris Ferguson ("Mr. Ferguson"), who he had a prior working relationship with, to discuss any portfolio companies he may have that would look to go public. Plaintiff and Mr. Ferguson elected to pursue a reverse merger with Mr. Ferguson's portfolio company Focus Fiber (which is now FTE Networks, NYSE: FTNW). In furtherance of the endeavor, Laidlaw created 5G Investments, LLC (the "LLC"), managed by Hugh Regan, Laidlaw's Head of Investment Banking. Plaintiff was the point person on the transaction.

12. Plaintiff's duties with regard to the BEAC transaction included but were not limited to: interfacing regularly with the brokers regarding the transaction, being on calls with the brokers' clients who were potentially investing, and interfacing with the senior note holders from the prior transaction who they needed to sign forbearance agreements.

13. The LLC received a fee, and was to receive an additional fee when the LLC distributed the security/cash to its holders. In addition, Laidlaw was to receive fees associated with the Reverse Merger of FTE Networks/Beacon. Pursuant to the parties' agreement and understanding, since Plaintiff generated the surviving entity (FTE Networks), and handled the majority of the work associated with the transaction, he was entitled to a significant portion of such fees.

14. At the end of 2014, Plaintiff was asked to move to London to spearhead Laidlaw's European Capital Markets efforts. Plaintiff moved to England in the beginning of 2015.

15. During the move to England, Plaintiff was asked to pursue a debt transaction for FTE Networks. While in London, Plaintiff connected with Patrick Feeney ("Mr. Feeney"), of Lateral Asset Management. Plaintiff made the initial introduction of FTE Networks to Mr. Feeney in April of 2015. Over the next 8-9 months, Plaintiff spoke with FTE Networks and Mr. Feeney every day, often between the hours of 3:00 p.m. to 5:00 p.m. PST (where Mr. Feeney was/11:00 p.m. to 1:00 a.m. GMT/London local – where Plaintiff was).

16. Plaintiff was the only Laidlaw employee involved in the negotiations.

17. This resulted in closing a senior note with Lateral in 2015, for which Laidlaw was paid a fee in 2016. At the LLC's request, the fee was paid in two installments. Plaintiff had to make the request of Mr. Eitner directly for payment of the fee in installments.

18. In the spring of 2016, while Plaintiff was still in London, FTE Networks pursued an acquisition of significant size. CEO Michael Palleschi and EVP Anthony Sirotka came to London and met with Plaintiff and Richard Michalski ("Mr. Michalski"), regarding the acquisition. In April/May of 2017, FTE Networks closed the acquisition.

19. At that time, Plaintiff was no longer with Defendant Laidlaw, so he called Mr. Ahern to inform him of the transaction. Mr. Ahern expressed on the phone that he was unaware that Lateral had provided the debt capital for the transaction. Further, he asked if Defendant Laidlaw had been paid a fee on the investor, given most transactions carry a "tail" associated with future investments in the same company by introduced parties.

20. At the time the proposition of Plaintiff moving to London came up, Mr. Michalski was

also going to be moving to London. Plaintiff and Mr. Michalski were to work as partners in the business.

21. In the interest of jumpstarting their retail/high net worth business in London, Plaintiff asked Michael Palleschi, Mr. Ferguson, John Wood, David Lethem (CFO), and others to open accounts with Mr. Michalski and "house" their FTNW stock with him. All of the aforementioned employees did in fact open accounts with Mr. Michalski. Not only was Plaintiff the point person on the transactions, but the LLC viewed him as their connection to Laidlaw.

## FIRST COUNT
### Breach of Contract

22. Plaintiff repeats, reiterates and incorporates by reference the allegations contained in Paragraphs 1 through 21 as if fully set forth herein.

23. Plaintiff fully performed his duties and obligations pursuant to the Parties' Agreements and Understanding.

24. As a result of Plaintiff's efforts, Defendant Laidlaw has received significant fees, commissions, and incentives in the form of cash, LLC membership interests, stocks and other securities.

25. Plaintiff was at all times the individual primarily responsible for the FTNW, LLC, and Lateral transactions.

26. Further, Plaintiff was the originator of these relationships.

27. As a result, Plaintiff was entitled to commissions, fees and other compensation related to these transactions.

28. Defendant Laidlaw breached its duties and obligations under the parties' Agreements

and Understandings, by failing to pay Plaintiff the earned commissions, fees and compensation after Plaintiff's employment with Defendant Laidlaw ended.

29. Plaintiff has notified Defendant Laidlaw of its breaches and Defendant has failed and refused to remedy said breaches.

30. As a direct and proximate result of Defendant Laidlaw's breaches, Plaintiff has incurred and will continue to incur damages.

31. Specifically, Plaintiff has lost significant income due and owing.

**WHEREFORE**, Plaintiff, Bryan Kobel, demands judgment against Defendant, Laidlaw & Company (UK) LTD, for damages, plus accrued interest through the date of entry of judgment, costs of suit, reasonable attorneys' fees and such other relief as the court may deem just and equitable.

## SECOND COUNT
### Conversion

32. Plaintiff repeats, reiterates and incorporates by reference the allegations contained in Paragraphs 1 through 31 as if fully set forth herein.

33. During all relevant times, Defendant Laidlaw received and accepted fees, commissions, and incentives in the form of cash, LLC membership interests, stocks and other securities, related to transactions initiated and maintained by Plaintiff.

34. Plaintiff was at all times entitled to a portion of such fees, commissions, and incentives.

35. Despite knowledge of Plaintiff's entitlement to a portion of such fees, commissions, and incentives, Defendant Laidlaw converted such fees, commissions, and incentives to its own ownership.

36. By its actions, Defendant Laidlaw deprived Plaintiff of sums and/or property that Plaintiff was rightfully entitled to.

37. As a direct and proximate result of Defendant Laidlaw's conversion, Plaintiff has incurred, and will continue to incur, damages.

**WHEREFORE**, Plaintiff, Bryan Kobel, demands judgment against Defendant, Laidlaw & Company (UK) LTD, for damages, plus accrued interest through the date of entry of judgment, costs of suit, reasonable attorneys' fees and such other relief as the court may deem just and equitable.

### THIRD COUNT
### Unjust Enrichment

38. Plaintiff repeats, reiterates and incorporates by reference the allegations contained in Paragraphs 1 through 37 as if fully set forth herein.

39. Defendant Laidlaw has received and retained fees, commissions, and incentives received for work originated and performed by Plaintiff, knowing that it was not entitled to all of such fees, commissions, and incentives.

40. As a result of Defendant Laidlaw retaining fees, commissions, and incentives beyond those it was entitled to, Defendant Laidlaw has been unjustly enriched.

41. As a direct and proximate result, Plaintiff has incurred and will continue to incur damages.

**WHEREFORE**, Plaintiff, Bryan Kobel, demands judgment against Defendant, Laidlaw & Company (UK) LTD, for damages, plus accrued interest through the date of entry of judgment, costs of suit, reasonable attorneys' fees and such other relief as the court may deem just and equitable.

## FOURTH COUNT
### Breach of Covenant of Good Faith and Fair Dealing

42. Plaintiff repeats, reiterates and incorporates by reference the allegations contained in Paragraphs 1 through 41 as if fully set forth herein.

43. Upon conclusion of Plaintiff's employment with Defendant Laidlaw, the parties agreed that Plaintiff would continue to be entitled to fees, commissions, and incentives earned on deals and projects Plaintiff originated.

44. Defendant Laidlaw has acted in bad faith in retaining such fees, commissions, and incentives received after conclusion of Plaintiff's employment, and not paying those sums over to Plaintiff.

45. Defendant Laidlaw's conduct is a breach of the covenant of good faith and fair dealing.

46. As a direct and proximate result of Defendant Laidlaw's breach of the covenant of good faith and fair dealing, Plaintiff has incurred and will continue to incur damages.

**WHEREFORE**, Plaintiff, Bryan Kobel, demands judgment against Defendant, Laidlaw & Company (UK) LTD, for damages, plus accrued interest through the date of entry of judgment, costs of suit, reasonable attorneys' fees and such other relief as the court may deem just and equitable.

## JURY DEMAND

Plaintiff Bryan Kobel demands trial by jury on all issues so triable.

## CERTIFICATION

I hereby certify that pursuant to Rule L. Civ. R. 11.2: (1) the matter within controversy is not presently the subject of any other action pending in any other court or arbitration; (2) no other action or arbitration proceeding is contemplated; and (3) no other necessary party to be joined in the subject litigation is currently known.

                                              HARWOOD LLOYD, LLC
                                              Attorneys for Plaintiff

                                              By:  */s Kathleen M. Lee*
                                                      KATHLEEN M. LEE

Dated: January 2, 2019